December 29, 1923. The opinion of the Court was delivered by
Petition for writ of habeas corpus. The petition was presented to Mr. Justice Fraser on October 22, 1923, who signed the writ, providing for the immediate production of the body of the petitioner, who was in the custody of the Chief of Police of the city of Sumter, under arrest upon the charge of violating the license ordinance of the city for the year 1923. Upon the return to the writ, Mr. Justice Fraser passed an order referring the entire matter to this Court for a hearing on November 12, 1923, at 10 a. m. At the appointed time the matter was heard by this Court.
The facts of the case, as to which there appears to be no controversy, are as follows:
The petitioner is a member of the firm of Bates Yelton, live stock dealers in the city of Sumter. On August 6, 1923, the petitioner's firm, having previously paid to the City Council the license required of dealers in horses and mules, decided to extend that business to selling horses *Page 169 
and mules at auction, and applied to the City Council for a license to conduct that business. At a meeting of the Council held on that day, they adopted a resolution authorizing the issuance of a license to said firm for the period expiring December 31, 1923; the license to read as follows:
"Wholesale dealers in horses, mules and live stock, operating in their own place of business, selling at auction or private sale, or both, $100.00 minimum basis $10,000.00 and $2.00 for every $1,000.00 for each additional thousand or fraction thereof. It was understood that it was optional with Council after January 1st, 1924, to increase or decrease the terms of this license as circumstances would warrant."
The petitioner's firm thereupon leased a place of business and went to great expense and prepared to enter into and engage in said business pursuant to said license. Thereafter the petitioner was notified to appear before Council, which proposed to reconsider the granting of the license as above stated. He declined to attend. At that meeting the Council attempted to revoke the license which had been granted, and to restore the license as it was under the license ordinance adopted October 25, 1922, for the year 1923:
"Class No. 5. * * * Auction sale of horses and mules, whether by a licensed stable or not, per day, $300.00."
Thereafter the petitioner offered to pay the amount required by the Council under its resolution of August 6, 1923, and referred to, and attempted to conduct an auction sale in accordance therewith, when he was arrested in October, 1923, for a violation of the license ordinance of October 25, 1922, above referred to. Thereupon this proceeding was instituted to test the validity of his arrest.
The validity of the arrest depends upon the validity of the ordinance known as the "License Ordinance" for the year 1923. The position of the city that *Page 170 
the proceeding is virtually injunctive in its effect upon the collection of the city's revenue, and therefore obnoxious to Section 511, Volume 3, Code of Laws A.D. 1922, cannot be sustained for the reason that the defendant is under arrest, entitled to the writ of habeas corpus, and to his discharge of this Court should determine that he is restrained of his liberty by virtue of his arrest under a void ordinance, regardless of the effect of that decision upon the revenues.
The validity of the ordinance is attacked upon various grounds, only one of which we deem it necessary to consider.
The authority of the city to impose the license tax is derived from Section 4545, Volume 3, Code of Laws A.D. 1922, which is as follows:
"Said city or town council may, and they are hereby authorized annually to require by ordinance the payment of such reasonable sums of money as a license by any person or persons, corporation or corporations, engaged or intending to engage in any calling, business, occupation or profession, in whole or in part, within the limits of said cities or towns except those engaged in the calling or profession of teachers or ministers of the Gospel. Provided, that the said license shall be graduated according to the gross income of the persons, firms or corporations required to pay such license, or upon the amount of capital invested in said business. They shall have power to collect license or taxes from all persons representing publicly within the limits of said city or town, for gain or reward, any plays or shows of whatever nature or kind soever; and said city or town council are hereby authorized and empowered to give full force and effect to this section and to punish delinquents thereunder."
It thus appears that the amount authorized to be charged for an annual license is limited in the first place to "a reasonable sum," and must be graduated according to "the *Page 171 
amount of capital invested in said business." The language of the Constitution is (Article 8, § 6):
"License or privileged taxes imposed shall be graduated so as to secure a just imposition * * * upon the classes subject thereto."
The ordinance in question, so far as it relates to the matter in hand, is as follows:
 Class No. 5
Business or income basis, $2,000. On each additional $100, $2.50 per $100.
Where the gross annual income from the business, callings or professions enumerated in the following schedule shall be two thousand dollars or less, the license shall be at the rate set forth in said schedule and where the gross annual income exceeds two thousand dollars, the license shall be increased from the amount set forth in said schedule at the rate of two and 50/100 dollars for each hundred dollars of gross income in excess of two thousand dollars.
Auction sale of horses and mules, whether at a licensed stable or not, per day, $300.00.
Auction sale of cows, whether at a licensed stable or not, per day, $37.50.
Dealers in cows, for less than one year, per month, $300.00.
Dealers in cows, for less than one year, per month, $75.00.
Dealers in horses and mules, per year, $450.00.
Dealers in cows, per year, $150.00
It will be observed that the ordinance does not pretend to graduate the license fee according to "the amount of capital invested in said business," but purports to graduate it according to the gross income of the licensee, and clearly refers to the gross annual income. It fixes the "business or income basis" at $2,000, and provides in terms that if the gross annual income does not exceed $2,000, the license tax shall be $300 per day; and that if it exceeds *Page 172 
$2,000, it shall be $300 plus 2 1/2 per cent. of the excess of the gross annual income over and above $2,000.
So that if the auction sales for the entire year amount to $2,000 or less, the licensee is required to pay $300 per day for the entire year, or more than $10,000 upon a business of $2,000.
The return of the city shows that at the auction held by the petitioner after the tentative license was granted, the petitioner sold 260 horses and mules; the horses averaging $60 a head and the mules $85 to $125. Assuming that they were equally divided, the sale aggregated at least $20,000. For a single day's operations, therefore, the license imposed would be $300 plus 2 1/2 per cent of $1,800, $450, total $750; and if, as the ordinance clearly provides, this should be $750 per day, for the entire year, the license tax would be over $200,000.
It would seem a reasonably low estimate that auction sales would be held by one who established such a business, at least once a month for three months in the year; and if he should sell $10,000 worth at each sale, his gross income would be $30,000. If he should be charged for only three days in the year, the license tax would be $300 plus 2 1/2 per cent of $8,000, $200, $500 for each day, $1,500 for the three days, a tax of 5 per cent upon his gross income. If, as the ordinance clearly provides, this should be $500 per day for the entire year, the license tax would be $150,000; and at $1,500 a day, three times that amount.
The contention of the city is that the ordinance was intended to exact a license tax for only the days upon which the auctions might be held, and that for that reason the same is reasonable. There are two conclusive answers to this contention: (1) The ordinance does not so provide, and if it did the amount is unreasonable and not a just imposition; (2) there is no authority under the statute, except in the limited instances provided for, for other than an annual license tax based upon the gross income for the *Page 173 
year or the amount of capital invested. Doubtless a license for a proportionate sum might be issued for a portion of the year unexpired when the licensee should begin business.
The ordinance clearly violates the limitations contained in the statute, in that it fixes an unreasonable sum for the license, does not graduate the license fairly according to gross income nor according to capital invested, and is void.
The petitioner is therefore entitled to his discharge and it is so ordered.